**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

WILLIAM DAVID EVANS, JR.,     )
                                    )
        Petitioner,         )
                                    )
v.                                      )     Case No. CIV-14-576-HE
                                    )
JASON BRYANT, Warden,       )
                                    )
        Respondent.[1]      )

## <u>SUPPLEMENTAL REPORT AND RECOMMENDATION</u>

Petitioner, William David Evans, Jr., appearing pro se, has filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. No. 1] challenging the constitutionality of his state court conviction in Case No. CF-2011-1, District Court of Logan County, State of Oklahoma. Respondent has filed a Supplemental Response [Doc. No. 19] and Petitioner has been given the opportunity to file a Reply, *see* Order [Doc. No. 25], but has failed to timely do so.

The matter has been referred by Chief United States District Judge Joe Heaton for proposed findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below it is recommended that the Petition be denied.

## I.   <u>Procedural History /Factual Background</u>

On October 5, 2012, Petitioner entered a guilty plea to Second Degree Murder, after conviction of two or more felonies, in Case No. CF-2011-1, District Court of Logan County, State of Oklahoma. Petitioner was sentenced to forty-five years imprisonment with twenty years

---

[1] Petitioner filed a Notice of Change of Address [Doc. No. 24] on July 18, 2016 which demonstrates he is currently incarcerated at James Crabtree Correctional Center (JCCC). Accordingly, Jason Bryant, Warden of JCCC is hereby substituted as the proper respondent in this action. *See* Rule 2(a) Rules Governing Section 2254 Cases in the United States District Court; *see also* Fed. R. Civ. P. 25. The Clerk of Court shall note the substitution on the record.

suspended and credit for time served. Petitioner did not move to withdraw his guilty plea or otherwise appeal his conviction.

On September 4, 2013, Petitioner filed an application for post-conviction relief. On January 14, 2014, the state district court denied relief and Petitioner appealed. *See Logan County District Court Order* [Doc. No. 7-5] and Petition in Error [Doc. No. 7-6]. On May 9, 2014, the Oklahoma Court of Criminal Appeals (OCCA) affirmed the denial of post-conviction relief. *See* OCCA Order [Doc. No. 7-7].

Respondent previously filed a Response [Doc. No. 7] and sought dismissal of the Petition, on grounds the claims raised by Petitioner were procedurally barred. As addressed more fully below, the undersigned recommended the defense of procedural bar be denied because the Tenth Circuit has determined Oklahoma's procedural bar inadequate under the circumstances presented. *See* R.&R.[Doc. No. 9] at pp. 5-6 (*citing Hickman v. Spears*, 160 F.3d 1269 (10th Cir. 1998)). Neither party objected to the R.&R. and it was adopted by the District Judge. *See* Order [Doc. No. 10]. As directed by the Court, Respondent then filed a Supplemental Response (Suppl. Resp.) [Doc. No. 19].

## II. <u>Grounds for Federal Habeas Corpus Relief</u>

Petitioner's grounds for federal habeas relief are all based on allegations that trial counsel provided constitutionally ineffective assistance. *See* Petition at p. 5.[2] Petitioner claims trial counsel failed to discuss with Petitioner the discovery provided by the State and Petitioner could not, therefore, discuss trial strategies with his counsel. Petitioner particularly references the fact that he was "under the influence" at the time of the incident which serves as the basis for his conviction and when he "spoke with detectives." *See* Petition, Brief/Memorandum (Brief) [Doc.

---

[2] Citations to the parties' submissions refer to the Court's ECF pagination.

No. 1-2] at p. 1. He further claims that trial counsel failed to pursue available defenses and, in turn, did not properly advise Petitioner with respect to entering a plea of guilty. *Id.* According to Petitioner, his counsel should have filed a motion to suppress with respect to his "conversations with the detectives" and should have notified the state district court that Petitioner would be asserting an intoxication defense. *Id.* at pp. 1-2. In addition, Petitioner claims trial counsel should have pursued a defense of self-defense. Respondent concedes that these ineffective assistance of trial counsel claims – related to the plea proceedings – are exhausted and, therefore, has addressed the merits of the claims.

Petitioner further brings a claim alleging that he tried to contact his trial counsel to notify him that he wished to withdraw his guilty plea but counsel never answered Petitioner's mail or collect calls or came to see him during the limited ten-day period provided under Oklahoma law for withdrawing his guilty plea. *See* Brief at p. 1. Respondent asserts that this claim is unexhausted. Nonetheless, Respondent seeks denial of the claim on the merits.

## III. <u>Standard of Review</u>

The Oklahoma courts did not review the merits of Petitioner's claims of ineffective assistance of trial counsel. The OCCA deemed the claims – to the extent the claims were presented in the state court – procedurally barred. As discussed, this Court deemed the state's application of a procedural bar inadequate to preclude federal habeas review and directed Respondent to supplement his response to address the merits of Petitioner's claims. Under these circumstances, the deferential standard of review of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), does not apply and this Court conducts a de novo review of the claims raised. *See, e.g., Slaughter v. Mullin*, 68 F. App'x 141, 148 (10th Cir. 2003) (finding OCCA's application of procedural bar to ineffective assistance of trial counsel claim

inadequate to preclude habeas review and applying de novo standard of review "[b]ecause the state appellate court did not address the merits of this claim") (*citing Romano v. Gibson*, 239 F.3d 1156, 1180 (10th Cir. 2001)).

## IV.    Analysis

### A.    Ineffective Assistance of Trial Counsel / Plea Proceedings

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner claiming constitutionally ineffective assistance of counsel must show that counsel's performance was deficient and that such deficient performance prejudiced him.  In *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985), the Supreme Court extended the *Strickland* standard to the guilty plea context.  In doing so, the Court observed that the deficient performance prong or "first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence. . . ."  *Id.* at 58-59.  The prejudice prong, however, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  To satisfy this prong, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* [3]

The Supreme Court then provided further guidance applicable to the claims raised by Petitioner in this case:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on

---

[3] Respondent addresses Petitioner's ineffective assistance of trial counsel claims by framing the inquiry in terms of whether the claims would have succeeded on any appeal of Petitioner's conviction.  *See* Resp., Proposition II at pp. 10-27; *see also id.* at p. 26 (stating that "[a]s the underlying issues of ineffective assistance of trial counsel would have failed *in an appeal*, Counsel cannot be found ineffective in failing to perfect an appeal of Petitioner's plea of guilty") (emphasis added).  In doing so, Respondent applies an incorrect standard.  As set forth, the proper standard governing Petitioner's claims of ineffective assistance of trial counsel in the course of the plea proceedings, is the standard announced in *Hill*.

the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' *Id*., 466 U.S., at 695, 104 S.Ct., at 2068.

*Id*. at 59–60.

In addition, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (*quoting Hill*, 474 U.S. at 59). Rather, the Court "look[s] to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." *Id*. Applying these standards and for the reasons discussed below, Petitioner fails to demonstrate he received constitutionally ineffective assistance of counsel.

### 1. Intoxication Defense

Petitioner claims, in wholly conclusory fashion, that his trial counsel should have pursued a defense of intoxication. He claims his trial counsel knew Petitioner was "under the influence at the time of the alleged offense" and, therefore, did not properly advise Petitioner of whether to accept the plea. He claims that had his trial counsel "succeeded on the intoxication defense "that too would had [sic] changed the final/end result of any negotiated plea/trial verdict." *See* Brief [Doc. No. 1-2] at pp. 1, 2.

It is unclear whether Petitioner claims trial counsel should have pursued a defense of *voluntary* intoxication or *involuntary* intoxication.  In support of this claim, Petitioner relies only on the fact that he was "heavily intoxicated at the time of the alleged offense" and that the record supports this because at the preliminary hearing, "the detective testified as to the purchase of whisky/alcohol from the liquor store."  *See* Brief [Doc. No. 1-4] at p. 1.  In portions of his Brief, Petitioner specifically references a defense of "involuntary intoxication," *see, e.g.*, Brief [Doc. No. 1-4] at p. 1, and in other portions of the Brief Petitioner simply references the defense of intoxication, *see, e.g.*, Brief [Doc. No. 1-2] at p. 2.   The OCCA identified the claim raised in post-conviction proceedings as based on the defense of *involuntary* intoxication.  *See* OCCA Order at pp. 1-2 ("Petitioner claimed that his trial counsel provided ineffective assistance by . . . not filing a motion raising the defense of involuntary intoxication . . . .").

Respondent argues that the record does not support a defense of involuntary intoxication.  *See* Suppl. Resp. at pp. 16-17 ("There was no evidence that Petitioner's drinking was involuntary therefore, at best Petitioner could only claim voluntary intoxication . . . .").  This Court agrees with Respondent.[4]

Respondent further asserts that a voluntary intoxication defense is "without any legal justification" under the circumstances of this case, *see* Suppl. Resp. at p. 17, and counsel was not

---

[4] Under Oklahoma law, "[t]o invoke the defense of involuntary intoxication, the defendant must produce sufficient evidence to raise a reasonable doubt as to the voluntariness of his intoxication."  *Patton v. State*, 973 P.2d 270, 290 (Okla. Crim. App.1998) (*citing Wooldridge v. State*, 801 P.2d 729, 734 (Okla. Crim. App.1990)).  "Involuntary intoxication results from fraud, trickery or duress of another, accident or mistake on defendant's part, pathological condition or ignorance as to effects of prescribed medication." *Id.*  None of the circumstances that give rise to a defense of involuntary intoxication are present and, therefore, trial counsel neither rendered deficient performance nor was Petitioner prejudiced by any alleged failure of his trial counsel to pursue a defense of involuntary intoxication.

ineffective in failing to pursue this defense beyond the preliminary hearing. Respondent's assertion is correct.

At the preliminary hearing, Petitioner's trial counsel elicited testimony from witnesses concerning the fact that Petitioner was "really drunk" on the night in question and that Petitioner was a "heavy drinker." *See* State Court Records [Doc. No. 21] Preliminary Hearing Transcript (PH Tr.) at p. 57; *see also id*. at 61, 80-81, 159. Testimony was also introduced at the preliminary hearing that Petitioner had visited a liquor store earlier that night. *See id*. at 209. As noted above, Petitioner cites no additional evidence in support of his claim that trial counsel should have pursued an intoxication defense.

On June 21, 2012, the State filed an Amended Information reducing the offense charged from First Degree Murder to Second Degree Murder. *See* Amended Information [Doc. No. 19-10]. Thereafter, on October 5, 2012, Petitioner entered a guilty plea to charges of second degree murder. Because the State amended the Information and Petitioner faced trial solely on the charge of Second Degree Murder, he was not prejudiced by trial counsel's alleged failure to pursue this defense. As explained by the Oklahoma Court of Criminal Appeals in *Martinez v. State*, 371 P.3d 1100 (Okla. Crim. App. 2016):

> Under Oklahoma law, "[n]o act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition," 21 O.S.2001, § 153; and "[h]omicide committed with a design to effect death is not the less murder because the perpetrator was in a state of anger or voluntary intoxication at the time." 21 O.S.2001, § 704. Voluntary intoxication may reduce criminal homicide from first degree murder to second degree murder or first degree manslaughter; but only when the defendant is "so utterly intoxicated, that his mental powers are overcome, rendering it impossible

> for a defendant to form the specific criminal intent . . . element of the crime."
> *Grissom v. State*, 2011 OK CR 3, ¶ 38 n. 13, 253 P.3d 969, 983 n. 13 (*quoting McElmurry v. State*, 2002 OK CR 40, ¶ 72, 60 P.3d 4, 23).

*Id.* at 1108. Once Petitioner's charges were reduced from first degree murder to second degree murder the defense of voluntary intoxication was no longer available. *Compare Davis v. State*, 980 P.2d 1111, 1117 (Okla. Crim. App. 1999) (recognizing that "[i]nstructions on second degree murder are warranted only where there was no specific intent to kill"); *Fairchild v. State*, 998 P.2d 611, 618-623 (Okla. Crim. App. 1999) (holding that voluntary intoxication is not a defense to crimes that do not require specific criminal intent); *see also Valdez v. Ward*, 219 F.3d 1222, 1245 (10th Cir. 2000) ("Under Oklahoma law, second degree murder requires a lack of intent.") (citation omitted).

Under these circumstances, Petitioner fails to demonstrate either that counsel's performance was deficient or that he was prejudiced by the allegedly deficient performance. Nothing in the record supports a finding that had counsel pursued a defense of voluntary intoxication, there is a reasonable probability that Petitioner would not have pleaded guilty and would have insisted on going to trial. Petitioner, therefore, is not entitled to federal habeas relief and this claim should be denied.

### 2. Suppression of Petitioner's Confession

Petitioner next claims trial counsel was ineffective because he did not move to suppress Petitioner's confession. According to Petitioner, he was under the influence of pain medication (Lortab). *See* Brief [Doc. No. 1-4] at p. 1. Petitioner states it was well-documented that he had been to the hospital on the day of his arrest for treatment of his swollen hand. *See id.*

The record establishes that Petitioner committed the crime on December 30, 2010, sometime before approximately 9:00 p.m. Petitioner was arrested the next day, on December 31,

2010 at approximately 6:00 p.m. *See* Suppl. Resp., Logan County Incident Report [Doc. No. 19-11]. Respondent has provided the video of Petitioner's interview by Detective Kutay, an employee of the Logan County Sheriff's Office, late in the evening of December 31, 2010 and continuing into the next day, January 1, 2011. *See* State Court Records [Doc. No. 21]; *see also* Suppl. Resp., CD of Interview of Petitioner [Doc. No. 19-15] (filed conventionally).

This Court's review of the interview shows that Detective Kutay began the interview by reading Petitioner his *Miranda* rights. Petitioner acknowledged that he understood his rights, that he wanted to talk to Detective Kutay and further that he understood he could stop the interview at any time. During the interview, Petitioner told Detective Kutay that he had been to the hospital earlier that day (just before noon) to have his hand examined. Petitioner did not state during the interview that he had taken any pain medication.[5]

At the preliminary hearing, Detective Kutay testified that he "believed [Petitioner] was okay to answer questions." PH Tr. at 179. Detective Kutay testified that Petitioner "recognized who I was," that Detective Kutay had "dealt with [Petitioner] for years, so [Petitioner] understood who [he] was" and that Petitioner "knew why he was there, as far as that [Detective Kutay] was questioning him." *Id.* Defense counsel lodged an objection based on prior testimony at the preliminary hearing that Petitioner had been "drunk," "out of control," and "incoherent" on the night of the crime and contended, therefore, that Petitioner's waiver of rights was not "free and voluntary." PH Tr. at 180.

---

[5] During the course of the interview, Petitioner requested that he be permitted to take anxiety medication and the medication, approved by a nurse, was provided to him. Petitioner does not claim that his mental state, or the fact that he took this medication during the course of the interview, rendered his confession involuntary. And, even if Petitioner were to make such a claim, the video of his confession belies that these circumstances rendered his confession involuntary.

The prosecution then asked Detective Kutay whether "he had any information that [Petitioner] might be intoxicated prior to the time that [the detective] spoke with him." PH Tr. at 181. Detective Kutay testified he did not believe Petitioner was under the influence of any kind of narcotic or alcohol. *Id*. He testified Petitioner "was able to answer my questions without a problem," "knew where he was," "kn[e]w why [the detective] was questioning him" and "answer[ed] [the detective's] questions appropriate[ly]." *Id*

The trial court then permitted defense counsel to voir dire Detective Kutay on the voluntariness issue. PH Tr. at 182. Detective Kutay testified that he "was made aware of the drinking that had taken place on the Thursday night." But Detective Kutay testified that the interview occurred "into Friday night or Saturday morning, a day later," "the 31st [of December] into the 1st [of January]." PH Tr. at p. 184. Detective Kutay further testified that Petitioner had been in custody three to four hours and that he had no idea how long Petitioner had been awake. PH Tr. at 185. Detective Kutay further acknowledged that during the interview Petitioner asked for medication for his anxiety and was provided that medication once approved by the nurse who booked Petitioner into the jail. *Id*. PH Tr. at 186-87. The trial court then overruled defense counsel's objection and found that Petitioner voluntarily waived his rights. PH at 187. The prosecution then questioned Detective Kutay further and the detective reiterated that during the interview Petitioner did not appear to be under the influence of drugs or alcohol and that if Petitioner had been taking any other kind of drug, it did not appear to be affecting Petitioner's thinking, speaking or understanding. PH Tr. at 188.

A necessary predicate for finding a confession or waiver of *Miranda* rights involuntary is the presence of police coercion. *See United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir. 1996) (holding that under the Due Process Clause, a confession is involuntary "if the

government's conduct causes the defendant's will to be overborne and his capacity for self-determination critically impaired"); *United States v. Brown*, 287 F.3d 965, 973 (10th Cir. 2002) (addressing waiver of *Miranda* rights and stating that the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion of deception" and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it").  Nothing in the record supports a finding that Petitioner's confession was coerced or that his waiver of *Miranda* rights was not knowing and voluntary.  Indeed, Petitioner makes no such claim.

Instead, Petitioner relies on purported pain medication he took for his hand earlier on the day of his arrest as grounds for challenging the voluntariness of his confession and/or waiver of *Miranda* rights.  Notably, "a state of intoxication does not automatically render a statement involuntary." *McCullah*, 76 F.3d at 1101 n. 3.  The mere fact that defendant was under the effect of an intoxicating substance will not be sufficient to overcome evidence "showing that the defendant 'was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them.'" *United States v. Augustine*, 742 F.3d 1258 (10th Cir. 2014) (*quoting United States v. Burson*, 531 F.3d 1254. 1256–57 (10th Cir. 2008)).  Ultimately, the Court must consider the totality of the circumstances to determine whether defendant's confession and/or *Miranda* waiver was voluntary.  *McCullah*, 76 F.3d at 1101 (confession); *Brown*, 287 F.3d at 973 (*Miranda*).

The record establishes that Petitioner's confession and/or waiver of *Miranda* rights was voluntary.  Detective Kutay's testimony at the preliminary hearing and the Court's own review of the interview establishes without dispute that Petitioner was not coerced and that he

understood the reason for the interview, the nature of the questions asked, the responses he provided and the consequences of his interview with Detective Kutay.

The Court underscores that in raising his ineffective assistance of trial counsel claim, Petitioner relies solely on the pain medication he had allegedly taken as the basis for contending a motion to suppress should have been filed. Nonetheless, whether Petitioner had taken pain medication, had residual effects of alcohol or drugs from the preceding day, or took anxiety medication during the course of the interview, the conclusion reached by the Court remains the same. Petitioner's counsel did not render deficient performance. At the preliminary hearing he challenged the voluntariness of Petitioner's waiver of his *Miranda* rights but received an adverse ruling from the court. Based on this ruling, it was reasonable for counsel not to separately move to suppress the statements made during Petitioner's interview with Detective Kutay. Nor was Petitioner prejudiced by defense counsel's failure to move to suppress the statements. As discussed, the record demonstrates no grounds for suppression existed due to the voluntariness of the confession and/or waiver of *Miranda* rights. Petitioner has failed to demonstrate that had his counsel filed a motion to suppress, there is a reasonable probability he would not have entered a plea of guilty and would have insisted on going to trial.

### 3. Defense of Self-Defense

Petitioner further claims that his trial counsel should have pursued the defense of self-defense because he knew that Petitioner suffered injuries as a result of the assault. According to

Petitioner, the victim used a weapon which Petitioner identifies as a "club/stick" and this fact is supported by "pictures taken at the jail." *See* Brief [Doc. No. 1-4] at p. 1.[6]

Under Oklahoma law, "[s]elf-defense is an affirmative defense which admits the elements of the charge, but offers a legal justification for conduct which would otherwise be criminal." *Davis v. State*, 268 P.3d 86, 114 (Okla. Crim. App. 2011). Reasonable grounds must exist for the belief that "one is about to suffer death or great personal injury." *Id*. at 114-15. Moreover, self-defense cannot be invoked by an aggressor. *Id*. at 115. Finally, a theory of defense is available only if *prima facie* evidence exists to support the defense. *Id*. at 114. "*Prima facie* evidence is evidence which in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the defendant's claim or defense, and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports." *Id*. at 114 (internal quotation marks and citation omitted).

As set forth above, the Court has reviewed Petitioner's statements made during the course of his interview with Detective Kutay. Petitioner did not make any statement to Detective Kutay during that interview that he acted in self-defense. According to Petitioner, he hit the victim because he was upset about words spoken by the victim about a woman. Petitioner stated that he hit the victim so hard he "knocked him out." Petitioner's hand was swollen from having struck the victim.

---

[6] It does not appear that Petitioner alleged in post-conviction proceedings that the victim brandished a weapon. Indeed, it does not appear Petitioner raised this specific claim before the Oklahoma courts but only generally alleged that trial counsel should have pursued other defenses. *See, e.g.*, OCCA Order at pp. 1-2 (identifying claim as alleging that trial counsel was ineffective for "not otherwise properly advising Petitioner or pursuing defenses in Petitioner's case"). As discussed more fully in relation to Petitioner's claim that trial counsel failed to file a direct appeal, even if this specific claim was not fairly presented to the state court, and therefore, is unexhausted, the claim can be denied on the merits. *See* discussion infra at pp. 15-17.

At the preliminary hearing, Detective Kutay provided testimony about the statements made by Petitioner during the police interview. This testimony, together with the testimony of other witnesses established that Petitioner returned to the victim's trailer the next day to remove his belongings and found the victim unconscious. PH Tr. at 133, 200. Petitioner used a towel to wipe up blood and observed that the victim was still breathing. PH Tr. at 200. He propped the victim up with pillows and a blanket to "make him more comfortable" but did not seek help. PH Tr. at 133, 200. Petitioner also removed items from the victim's trailer, including a gun that belonged to Petitioner. PH Tr. at 201.

None of these facts support grounds for claiming Petitioner acted in self-defense. Nor does any evidence exist to support Petitioner's conclusory claim made in this habeas action that the victim used a club or stick to threaten or injure Petitioner.

As Respondent notes, "[d]efense counsel attempted to infer Petitioner acted in self-defense at the preliminary hearing which fell flat in light of the evidence." *See* Resp. at p. 24 (*citing* PH Tr. at 115).[7] Petitioner's ineffective assistance of counsel claim premised on a failure to pursue a defense of self-defense is speculative, borders on frivolousness and is wholly

---

[7] Zachary Olson, the book-in officer at the Logan County jail, testified on direct examination at the preliminary hearing that he asked Petitioner why his hand was swollen and Petitioner stated in response: "In all honestly, [sic] man, the reason my hand is like this is because he said he was going to come over and shoot us. So I beat his ass." PH Tr. at 107. On cross-examination, defense counsel paraphrased this testimony:

> Q.     So what [Petitioner] told you was he was acting in self defense and reasonable fear for his own safety and his own life.
>
> A.     The way he was acting, yes. That's how he said it.

PH Tr. at 115. Petitioner's claim in this habeas action, that the victim used a "club/stick" as a "weapon" as grounds for claiming trial counsel should have pursued a self-defense theory is remarkably different than the statement he made to Officer Olson. Notably, Petitioner never argues in this action that the victim threatened to shoot him.

unsupported by the record. Counsel did not render deficient performance nor was Petitioner prejudiced by counsel's failure to pursue the defense. Petitioner has failed to demonstrate that there is a reasonable probability that he would have gone to trial rather than entered a plea of guilty based on counsel's alleged failure to pursue a self-defense theory. This claim for federal habeas relief, therefore, should be denied.

**B. Trial Counsel's Failure to Perfect an Appeal of Petitioner's Guilty Plea**

Petitioner further claims he wanted to move to withdraw his guilty plea and pursue a direct appeal but despite efforts to contact his attorney, he did not hear back from him. Specifically, he claims the following:

> Petitioner asserts he did in fact attempt to contact Atty. (Albert Hoch Jr.) by phone, and through mail to notify him that I did want to withdraw my plea; however – Mr. Hoch – never answered/approved by collect call, nor did he come to see me within the (10) days so I could relate to him my desire to withdraw/appeal my plea.

*See* Brief [Doc. No. 1-2] at p. 1. Petitioner has presented no evidence in support of this claim nor did he present this argument to the OCCA.

Respondent contends this claim is unexhausted and the Court agrees. Petitioner's post-conviction claims before the district court solely focused on alleged ineffective assistance of trial counsel *prior* to entering his plea. He claimed trial counsel provided ineffective assistance by "(1) not filing a motion to suppress statements Petitioner made to police, (2) not filing a motion raising the defense of involuntary intoxication, and (3) not otherwise properly advising Petitioner or pursuing defenses in Petitioner's case." *See* OCCA Order [Doc. No. 7-7] at pp. 1-2.

Addressing these claims in post-conviction proceedings, the state district court interjected issues related to the filing of a direct appeal by finding as follows:

> The Petitioner was advised of his right to appeal. The Petitioner took no steps to attempt to perfect a timely direct appeal. Nor has Petitioner offered any reason for the Petitioner's failure to file a timely direct appeal of Petitioner's convictions.

*See id.* at p. 2 (citing findings made by the state district court). In response to these findings, on appeal to the OCCA, Petitioner claimed for the first time that he "wholly relied upon his appointed counsel to adequately represent him through the entire litigation proceedings all the way through its finality[.]" *Id.* Even then, however, Petitioner made no allegations that he had attempted to contact his counsel through the mail or by placing collect calls, as he purports to claim on federal habeas review.[8]

At best, the record establishes that before the state courts, Petitioner only raised a claim of ineffective assistance of trial counsel as cause to overcome the state procedural default of his claims. He did not raise the claim he now purports to raise – that trial counsel deprived him of his right to file a direct appeal. As discussed infra, such a claim is qualitatively different, both as to the facts Petitioner relies on in support of the claim and as to the legal analysis governing such a claim. Therefore, the Court finds the claim was not fairly presented to the state courts and is unexhausted. *See, e.g., Williams v. Trammell*, 782 F.3d 1184, 1211 (10th Cir. 2015) (finding habeas petitioner's ineffective assistance of counsel claim included "partially unexhausted claim" to the extent it raised "an entirely new complaint of deficient performance and resulting prejudice" based on evidence not before the state court) (citations omitted).

Respondent further contends that notwithstanding Petitioner's failure to exhaust the claim, the claim can be denied on the merits. *See* 28 U.S.C. § 2254(b)(2) (providing that "[a]n

---

[8] In affirming the denial of post-conviction relief, the OCCA underscored the finding of the district court that "although Petitioner had been advised of his right to appeal, he did not take steps to bring a timely appeal." *Id.* at p. 3. The OCCA then found that "Petitioner *does not dispute this finding*." *Id.* (emphasis added). The OCCA concluded that Petitioner had not "established that is was error for the District Court to conclude his post-conviction claim had been waived by his failure to timely appeal." *Id.* at pp. 3-4.

application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The Court finds the claim should be denied but for reasons different than those advanced by Respondent. As discussed below, the doctrine of anticipatory procedural default bars federal habeas review of this claim.[9] Alternatively, the Court finds the claim lacks merit.

### 1. The Anticipatory Procedural Default Doctrine Precludes Federal Habeas Relief of Petitioner's Unexhausted Ineffective Assistance of Counsel Claim

Petitioner's claim that trial counsel provided constitutionally ineffective assistance by not moving to withdraw his guilty plea or otherwise pursuing a direct appeal is barred by the doctrine of anticipatory procedural default. *See Williams*, 782 F.3d at 1212 (explaining that anticipatory procedural default applies "where a petitioner fails to exhaust a claim and we, as a federal court, nonetheless conclude that the claim would be procedurally defaulted on remand"). As discussed above, Petitioner previously sought post-conviction relief in the Oklahoma courts. If Petitioner were to return to state court to exhaust his stand-alone claim that trial counsel was ineffective for failing to file a direct appeal, he would be raising this claim in a second application for post-conviction relief. However, "Oklahoma requires a post-conviction relief

---

[9] In his initial Response, Respondent raised the doctrine of anticipatory procedural default but did not treat Petitioner's ineffective assistance claim as a stand-alone claim. Rather, Respondent framed the claim as a claim of "cause" to overcome a procedural default of Petitioner's claims that trial counsel was ineffective for (1) failing to pursue an intoxication defense; (2) failing to move to suppress his confession; and (3) failing to pursue a defense of self-defense. *See* Resp. [Doc. No. 7] at p. 6 ("[I]f Petitioner were to exhaust his 'cause' in state court his claim would be procedurally barred as the application would be Petitioner's second request for post-conviction relief and would raise an issue which could have been raised in the first post-conviction."). Because this Court determined that the claims were not procedurally defaulted from federal habeas review, the Court found it unnecessary to address whether a claim of ineffective assistance of counsel established the requisite cause to overcome any state procedural default. *See* R.&R. at pp. 6-7. To the extent Petitioner raises a stand-alone claim of ineffective assistance of trial counsel, that claim now warrants separate consideration.

applicant to raise all grounds for relief which he actually knows or should have known through the exercise of due diligence in his original application for relief." *Id*. In *Williams*, as here, Petitioner "does not have a good excuse" for failing to present the ineffective assistance of counsel claim he now raises in his first application for post-conviction relief. *Id*.; *see also Cummings v. Sirmon*, 506 F.3d 1211, 1222 (10th Cir. 2007) ("readily" concluding that ineffective assistance of trial counsel claim, raised for the first time in habeas petition and, therefore, unexhausted, was procedurally barred: "[a]lthough the claim is technically unexhausted, it is beyond dispute that, were Cummings to attempt to now present the claim to the Oklahoma state courts in a second application for post-conviction relief, it would be deemed procedurally barred") (*citing* Okla. Stat. tit. 22, §§ 1086, 1089(D)(2)).[10]  The Court concludes, therefore, that Petitioner's ineffective assistance of trial counsel claim, premised on trial counsel's alleged failure to move to withdraw Petitioner's plea and/or file a direct appeal, is procedurally barred.

### 2. Petitioner Fails to Establish Counsel Rendered Deficient Performance by not Moving to Withdraw his Guilty Plea or Filing a Direct Appeal

Alternatively, the Court finds Petitioner's claim lacks merit.  Petitioner does not allege, nor does the record support, a finding that trial counsel disregarded specific instructions to move

---

[10] Petitioner's filings are void of any allegations that would overcome the procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (explaining that a petitioner can overcome a procedural default by establishing either cause for the default and actual prejudice from the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice). As the Tenth Circuit noted in *Cummings*, "a criminal defendant is not constitutionally entitled to representation by counsel in state post-conviction proceedings" and, therefore, he cannot rely on ineffective assistance of counsel as cause for failing to raise the claim in his first application. *Id*. 506 F.3d at 1223.  Nor can Plaintiff rely on the fundamental miscarriage of justice exception.  As set forth, the only grounds upon which Petitioner seeks habeas relief are tied to the alleged ineffective assistance of his trial counsel.  The Court has reviewed those claims and found they lack merit.  And, the record is void of any other grounds which would support application of the fundamental miscarriage of justice exception.

to withdraw his guilty plea (or otherwise file a direct appeal). Nor does the record show Petitioner explicitly told his trial counsel not to pursue an appeal. In such circumstances, i.e., where a defendant has not clearly conveyed his wishes one way or the other, whether counsel rendered constitutionally deficient performance turns upon "whether counsel in fact consulted with [Petitioner] about an appeal" and, if not, "whether counsel's failure to consult with [Petitioner] itself constitutes deficient performance." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000); *see also Bonney v. Wilson*, 754 F.3d 872, 882 (10th Cir. 2014) (recognizing that in *Flores-Ortega*, "the Supreme Court again expressly extended *Strickland*" to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal") (internal quotation marks and citation omitted).

The record shows that at the time Petitioner entered his guilty plea, he affirmatively indicated that he had been advised of his appeal rights, he did not want to remain in the county jail for the ten-day period during which he could have moved to withdraw his plea, he fully understood his appeal rights and his responses were freely and voluntarily given. *See* Plea of Guilty Summary of Facts [Doc. No. 7-1] at p. 11; *see also* Waiver [Doc. No. 7-2] The record further shows that trial counsel acknowledged he advised Petitioner of his appeal rights. *See* Plea of Guilty Summary of Facts at p. 11.

Pursuant to *Strickland*, whether counsel renders deficient performance by failing to consult with a defendant about an appeal is a "circumstance-specific reasonableness inquiry." *Flores-Ortega* , 528 U.S. at 478. The fact that Petitioner's claim arises in the context of a guilty plea is, "highly relevant" because "a guilty plea reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings." *Id*. at 480.

Also relevant to the determination is whether "there are nonfrivolous grounds for appeal" such that a rational defendant would want to appeal. *Id*.

The record demonstrates that Petitioner had been advised of his appeal rights and did not want to move to withdraw his plea or appeal his guilty plea conviction. As discussed above, the ineffective assistance of trial counsel claims upon which Petitioner bases his right to habeas relief are without merit and border on the frivolous. *See Pahcheka v. Ward*, 143 F. App'x 128 (10th Cir. 2005) (recognizing that in addressing the merits of whether, notwithstanding a guilty plea, a defendant might want to appeal a non-frivolous issue, the ultimate question is whether counsel "would have reason to believe that a *rational* defendant in [the defendant's] situation would have wanted to appeal, given all of the facts surrounding the entry of his plea").[11]

Moreover, Petitioner clearly would have known of the facts giving rise to his ineffective assistance claim during the ten-day period immediately following his guilty plea as Petitioner supports this claim with allegations that he attempted to contact his attorney at that time. Yet, Petitioner waited nearly one year before filing an application for post-conviction relief. Additionally, it strongly appears Petitioner only faulted his direct appeal counsel regarding his right to move to withdraw his plea and/or appeal in response to findings made by the state district court in denying Petitioner's post-conviction application. Finally, Petitioner makes only the most conclusory and unsupported assertions regarding attempts to notify his attorney that he wanted to pursue an appeal. *Compare Pahcheka*, 143 F. App'x at 137 (recognizing that letters petitioner purportedly wrote to his counsel and the trial judge concerning an appeal or withdrawal of his guilty plea were "mere phantoms" and therefore, insufficient upon which to "predicate a claim of ineffective assistance of counsel rising to constitutional dimensions").

---

[11] In this regard, the Court notes that due to his prior convictions, Petitioner faced a life sentence, but received a much lesser sentence.

Under this circumstance-specific inquiry, Petitioner cannot establish deficient performance and his claim that trial counsel was ineffective for not moving to withdraw his plea or filing a direct appeal of his conviction should be denied. Because the record fails to establish deficient performance, the Court need not address the prejudice prong of the *Strickland* inquiry. *See Strickland*, 466 U.S. at 2069 (recognizing that there is no need to "address both components of the [ineffective assistance] inquiry if the defendant makes an insufficient showing on one"). The Court recommends, therefore, in the alternative, that this claim be denied on the merits.[12]

## RECOMMENDATION

It is recommended that the Petition [Doc. No. 1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by December 29, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection

---

[12] Petitioner has not requested an evidentiary hearing and the Court finds no such hearing is warranted. Petitioner did not develop the factual basis of the claim in state court and the claim does not rely "on – (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court . . . or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id*. § 2254(e)(2) As set forth, Petitioner raised none of the facts before the Oklahoma courts that he now relies upon to support his claim regarding trial counsel's failure to move to withdraw his plea and/or file a direct appeal. *See Cullen v. Pinholster*, 563 U.S. 170, 186 (2011) ("[Section] 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were no adjudicated on the merits in state court."). Moreover, Petitioner's own allegations establish that the factual predicate of his claim was available to him during the ten-day period in which he was required under Oklahoma law to move to withdraw his plea. Because an evidentiary hearing is not warranted, the Court has not considered the affidavit of Petitioner's trial counsel submitted by Respondent in which trial counsel states that Petitioner never contacted him by any means about moving to withdraw his plea. *See* Suppl. Resp., Affidavit [Doc. No. 19-9]. Nor has the Court considered the affidavit in addressing the merits of Petitioner's other claims of ineffective assistance of trial counsel.

to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the Chief District Judge in this matter.

ENTERED this 8th day of December, 2016.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE